## Commonwealth v. Steenburg.

*Criminal law—Violation of Automobile Act—State highway—Portion of highway under construction—Operation of truck by contractors—Costs—Act of May 17, 1921.*

1. Under the Act of May 17, 1921, P. L. 908, where a portion of a State highway is under construction, and by the terms of the contract such portion is under the charge of, and care of, the contractor until acceptance of the highway by the State Highway Commissioner, an automobile truck, used in the construction work, may be operated in a borough by an employee of the contractor without a license and without muffling engines.

2. If an information is made against an employee of the contractor in such a case by a State policeman in the honest discharge of his duty, and the employee is discharged, the costs cannot be laid upon him, nor can they be imposed upon the county. They are, therefore, imposed upon the defendant.

Case submitted on agreed facts. Q. S. Jefferson Co., Aug. Sess., 1923, Nos. 38, 39 and 40.

*Walter E. Morris,* District Attorney, for Commonwealth.

*Brown & Means,* for defendant.

CORBET, P. J., Jan. 16, 1924.—On June 22, 1923, defendant was arrested on view by a State policeman, and three separate informations were made against him for (1) operating a motor-truck without a license; (2) operating it without a paid driver's license; and (3) operating it without having the engine muffled, in the Borough of Corsica, Jefferson County, Pennsylvania, on a State highway known as the Lakes-to-Sea Highway.

A firm of contractors, Rinehart Brothers, had previously entered into a contract with the State Highway Department of the Commonwealth to construct a primary State highway (part of said Lakes-to-Sea Highway) between Brookville, through the Borough of Corsica, to a point beyond the latter, and
4 D. & C.

were at the time engaged in and prosecuting the work of such construction in performance and fulfillment of their said contract with the State Highway Department, no final inspection and acceptance of the work having been made by said department.

The truck mentioned was owned and being used by said Rinehart Brothers in the work they were so engaged in doing under their contract, and the defendant was employed by and operating it as driver for said Rinehart Brothers, by their direction, in the prosecution of the work they were performing under the contract.

The latter contained a provision that "until acceptance of the roadway by the (Highway) Commissioner, it shall be under the charge and care of the contractor."

During the progress of the work, said Rinehart Brothers were advised by a chief engineer of the State Highway Department that while they were so in control of said highway under the provisions of their contract, it would not be necessary for them to register and procure tags for motor-vehicles and trucks used in and about said work. And, prior to the arrests of the defendant, they were further advised by the chief inspector for the district in which the highway in question is located, an employee of the State Highway Department, that it was unnecessary to register and procure license tags for any motor-vehicle owned and operated by them in furtherance of their work on the highway under their control.

The truck mentioned was not operated by the defendant, or the owners of it, on any other public highway than the one which was, as aforesaid, under the control of said Rinehart Brothers by virtue of the terms and provisions of their said contract with the Highway Commissioner of Pennsylvania.

The important question in the case is whether the contractors, after they had been put in possession of the portion of the highway in question by the Commonwealth, to enable them to do the work they had contracted to do for the Commonwealth, and while they were engaged in the execution of the work, in which the truck at the time of the alleged offences was being used, were, or their employee acting for them and under their direction was, in the respects charged, violating the motor-vehicle statutes.

It is provided in section 1 of the Act of May 17, 1921, P. L. 908, that "except in the case of emergency, wherein the safety of the public would be endangered, no public road or highway in this Commonwealth, excepting State highways and State-aid highways, shall be closed to vehicular traffic, except upon order of the authorities having charge of the maintenance of such highways."

And section 2 provides that, when closed, "it shall be the duty of the authorities authorizing the closing to immediately designate or lay out a detour, on which they shall erect, or cause to be erected and maintained, while such detour is in use, legible signs," etc.

There may not be explicit statutory direction that when a State highway is about to be graded and paved, it must be closed to vehicular traffic, and, pending such closing, that a detour or detours must be designated, laid out and maintained for the accommodation of the diverted travel and traffic, but the statute just referred to clearly implies the propriety and legality of such a course; necessity requires it, and it is a matter of common knowledge that it is invariably the practice.

It is essential that the contractor, in order to do his work without delay, interference, interruption or molestation, must be in the exclusive charge, possession and occupation of the highway covered by his contract, and that

for the time being the public must be excluded from using it, and thus it temporarily ceases to be a public highway, so far as travel, traffic and utility are concerned.

It is also necessary that the contractor shall have and use on the way to be erected or improved requisite appliances, machinery, tools, vehicles, materials and workmen of his own selection. The right to so have and freely use is expressly conferred by the Commonwealth for its benefit, and there can be no merely implied or inferred intendment that it imposed, or meant to place, any burden, restriction or limitation on the grant; on the contrary, the inference is, we think, that the Commonwealth intended the right should be as free, unrestricted and unencumbered as possible.

Our conclusion, therefore, is that there was no violation of the law by the defendant in any of the respects charged, and that he should be discharged in each instance.

The informations were made by a State policeman in the honest discharge of his duty; therefore, no costs should be imposed on him. Neither do we think the costs in these cases should be borne by the county. As we view it, there remains, therefore, no one upon whom the costs may be visited save the defendant. Although guiltless of the offences charged against him, it may be that he is not entirely blameless, as he is charged with three crimes; and, at any rate, he is the only party left who may be looked to for costs, and, therefore, they will be imposed on him. It may be that his employers, the contractors, may have desired a test case in order to obtain a judicial decision on the questions involved, and that they will relieve their employee of the costs.

And now, Jan. 16, 1924, the defendant is discharged in each of the cases above mentioned. However, it is ordered and directed that he pay the costs in each case.